IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HENRY L. THOMPKINS, ) | |
| AIS # 293028, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:19-CV-504-WKW-CSC |
| ) | |
| WARDEN GWENDOLYN GIVENS and ) | |
| LIEUTENANT DOMINIC WHITLEY, ) | |
| ) | |
|     Defendants. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Henry L. Thompkins, who is currently incarcerated at the Donaldson Correctional Facility, in Bessemer, Alabama, has filed pro se this 42 U.S.C. § 1983 action for damages and injunctive relief claiming that Defendants acted with deliberate indifference to his safety by failing to protect him from an inmate assault and for allowing drugs to ruin Alabama prisons. Doc. 15. Plaintiff alleges, on June 2, 2019, while incarcerated at the Ventress Correctional Facility ("Ventress"), Plaintiff was "jumped" by five inmates who were "high on ice and synthetic marijuana." *Id*. at 2. Plaintiff names as defendants, Warden Gwendolyn Givens and Lieutenant Dominic Whitley. *Id*. at 1.[1] For relief, Plaintiff seeks damages for his pain and suffering and release from confinement. *Id*. at 4.

Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief. Docs. 26, 27, 35, 38, 41. In these filings, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Id*. Upon receipt of Defendants' special report, as supplemented, the Court entered an order which provided Plaintiff an opportunity to file a response to Defendants' reports. Doc. 42. This order advised Plaintiff his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 2. The order further cautioned Plaintiff that unless "sufficient legal cause" is shown within fifteen days of entry of this order "why such action should

---

[1]     Because Plaintiff's amended complaint sought relief solely against Defendants Givens and Whitley, on November 25, 2019, the Court dismissed from this case, Defendants Staton Correctional Facility, Ventress Correctional Facility, Alabama Department of Corrections, and Bullock Correctional Facility.

<ul>
</ul>

not be undertaken,…the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report, supplements thereto and any supporting evidentiary materials as a motion for summary judgment, and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with law." *Id*. at 3. Plaintiff filed a response to Defendants' special report. Doc. 46. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment (Doc. 26) is due to be **GRANTED**.

I.  **Standard of Review**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This Court will also consider "specific facts" pled in a plaintiff's sworn amended complaint when considering his opposition to summary judgment.

2

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Plaintiff has failed to establish that there is a genuine issue as to a material fact to preclude summary judgment.

## II. Factual Background

By way of overview, Plaintiff asserts Defendants violated his constitutional rights when they failed to protect Plaintiff from an attack by other inmate(s) who were high on drugs. Doc. 15 at 2. Plaintiff alleges that Defendants failed to provide Plaintiff with adequate security and failed to prevent an influx of drugs from coming into Ventress for inmate consumption. *Id*. at 3.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

On June 2, 2019, Defendant Whitley submitted a "Duty Officer Report," narrating an altercation between Plaintiff and inmate Marcus Niles ("Niles"). Doc. 26-3. According to Defendant Whitley's subsequent Incident Report, the following events took place on June 2, 2019, at Ventress:

> On June 2, 2019, Correctional Officer Brittani Grant was assigned as Dormitory C Rover. At approximately 10:20 A.M., [Plaintiff] approached Officer Grant in the lobby of Dormitory C bleeding from his head. Officer Grant questioned [Plaintiff] as to what happened. [Plaintiff] stated that he was involved in an altercation with inmate [Niles]. At approximately 10:22 A.M., Officer Grant notified [Defendant Whitley] of the incident. [Defendant Whitley] arrived to Dormitory C to question [Plaintiff] about the incident. [Plaintiff] stated that he was approached by inmate Niles and he admitted to grabbing a pencil to defend himself. [Defendant Whitley] escorted [Plaintiff] to the Health Care Unit for a medical assessment. At approximately 10:35 A.M., [Plaintiff] was examined by Licensed Practitioner Nurse Michelle Rodgers. [Defendant Whitley] located inmate Niles in Dormitory C-4. [Defendant Whitley] questioned inmate Niles about the incident. Inmate Niles admitted that he was involved in an altercation with [Plaintiff]. Inmate Niles also stated that he was involved in a verbal altercation with [Plaintiff] in the pill call line. Inmate Niles continued to state that after pill call was completed,

> [Plaintiff] approached him in the dormitory with a knife causing a fight. [Defendant Whitley] escorted inmate Niles to the Health Care Unit for a medical assessment. [Defendant Whitley] questioned several inmates in Dormitory C-4 about the incident. [Defendant Whitley] discovered that inmates Niles and [Plaintiff] were arguing in the pill call line. After entering the dormitory, [Plaintiff] approached inmate Niles with a handmade knife. Inmate Niles retrieved a lock. During the fight, inmate Niles struck [Plaintiff] in the head with the lock. Nurse Rodgers informed [Defendant Whitley] that [Plaintiff] needed to be transported to Dale County Medical in Ozark, Alabama for further medical treatment. At approximately 11:15 A.M., [Defendant Whitley] notified On Call Supervisor Correctional Captain Patricia Myers. Regional Coordinator Cheryl Price and I&I Agent Leroy Dale [were] also notified of the incident. At approximately 12:00 P.M., [Plaintiff] departed the facility in Unit 1945 with Officers Derrius Lewis and Tim McDonald enroute to Dale County Medical. Inmate Niles was examined by Nurse Rodgers. After being released from medical, [Defendant Whitley] escorted inmate Niles to the Restrictive Housing Unit. Inmate Niles was placed inside cell C-6 pending disciplinary action. At approximately 4:00 P.M., Officers McDonald and Lewis returned to the facility with [Plaintiff]. [Plaintiff] was examined again by Nurse Rodgers. After the assessment, Nurse Rodgers informed [Defendant Whitley] that [Plaintiff] would be housed in the Health Care Unit for 23 hour medical observation. [Plaintiff] is also pending disciplinary action for fighting with a weapon.

Doc. 26-4 at 1-2. According to Plaintiff's June 2, 2019, inmate body chart, at 10:35 a.m., Plaintiff asserted, "they hit me on the toilet," and Nurse Rodgers treated Plaintiff for swelling and lacerations to Plaintiff's head. Doc. 26-5 at 1. Attached to Plaintiff's body chart is a photo of Plaintiff, showing a deep laceration to the back of Plaintiff's head. *Id*. at 2. Shortly after seeing Nurse Rodgers, Plaintiff was brought to Dale Medical Center, where Plaintiff received staples to treat his laceration. Doc. 26-7 at 17, 21.

That same day, Niles also had a body chart performed by medical personnel. Doc. 35-1 at 7. In the section reserved for the inmate's statement is the following: "This man keep[s] messing with me. I done went [sic] in seen counselors and everything. I didn't put my hands on this man first, he had a knife I told authorities and everything." *Id*. The body chart notes that Niles had no noticeable injury. *Id*.

After receiving treatment at Dale Medical Center, Plaintiff returned to Ventress, where he was admitted to the infirmary for 23-hour medical observation. Doc. 26-7 at 24.

Plaintiff's medical records indicate, on June 4, 2019, Plaintiff was placed on suicide watch, which required "constant watch" every fifteen minutes. Doc. 26-6 at 10, 20. Plaintiff's medical records further show, that on June 4, Plaintiff believed someone, or something was "out to get

4

[him] or trying to harm [Plaintiff], and that Plaintiff admitted to being assaulted by another inmate. Doc. 26-6 at 21. On June 13, 2019, Plaintiff's staples were removed. Doc. 26-6 at 11.

Additional facts are set forth as necessary.

### III. Discussion

In his amended complaint, Plaintiff alleges that his constitutional rights were violated at Ventress because: he was assaulted on June 2, 2019, by numerous inmates who were all under the influence of synthetic drugs; Defendant Whitley refused to take Plaintiff's photograph after the incident; and "ice and synthetic marijuana [have ruined] Alabama prisons." Doc. 15.

Plaintiff requests release from confinement and monetary damages for his pain and suffering. *Id*. at 4.

Defendants contend that they are entitled to immunity in both their individual and official capacities, and, in any event, Plaintiff is not entitled to relief because they did not violate any of his constitutional rights. Doc. 26.

#### A.   *Absolute Immunity*

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.     *Qualified Immunity*

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . .In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case

6

law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241-42).

    C.    ***Deliberate Indifference***

        1.    *Standard of Review*

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id.* at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a

7

constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each

8

individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Plaintiff must then satisfy the subjective component. To do so, Plaintiff "must [show] that the defendant[s] subjectively knew that [Plaintiff] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a ***particular threat or fear felt by [Plaintiff]***. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

9

## 2.     Failure to Protect or Provide Adequate Security

Plaintiff alleges that on June 2, 2019, Defendants acted with deliberate indifference to his safety regarding an attack on him by inmates under the influence of synthetic drugs. Plaintiff claims the assault occurred because Defendants allow inmates to take synthetic drugs. Broadly construing Plaintiff's amended complaint, Plaintiff asserts Defendants violated his Eighth Amendment rights.

Defendants maintain that Plaintiff has failed to show that Defendants failed to protect or provide Plaintiff with adequate security. Defendants' evidence includes Defendants' affidavits and other prison records.

Defendant Givens testifies that she was assigned to Ventress from May 1 through July 16, 2019, and that, during this period, Defendant Givens had no subjective knowledge that the conditions Plaintiff challenges caused a substantial risk of harm to Plaintiff. Doc. 26-1 at 1. Defendant Givens asserts that she neither had subjective knowledge concerning the June 2, incident, nor did she have knowledge of any potential attack on Plaintiff by other inmates. Doc. 38-1 at 1. Defendant Givens testifies that the June 2, incident was never reported to her; rather, the incident was reported to On Call Supervisor Correctional Captain Patricia Myers and Correctional Warden II Gwendolyn Babers. Doc. 35-1 at 1. Defendant Givens further testifies that the June 2 incident was investigated and that there was "never a mention of ice [or] synthetic marijuana as being a factor in this incident." Doc. 35-4 at 1.

Defendant Whitley testifies:

> On June 2, 2019, I, Correctional Lieutenant Dominic Whitley was informed of [Plaintiff] and inmate Niles, fighting in the dormitory. With this incident, I questioned both individuals concerning the incident. Also, I took both inmates to receive medical assessment. I was informed that [Plaintiff] needed to be transported to an outside facility for further treatment. I took all proper and necessary steps to investigate this incident and get the proper medical treatment for [Plaintiff]. I also separated [Plaintiff] from inmate Niles by placing inmate Niles in the Restricted Housing Unit.

Doc. 26-2 at 1-2. Defendant Whitley asserts, when he questioned Niles as to the incident, Niles admitted that he was involved in a verbal altercation with Plaintiff in the pill call line. Doc. 35-2 at 1. Niles told Defendant Whitley, "after pill call was completed, [Plaintiff] approached him in the dormitory with a knife causing a fight," and that, to defend himself, Niles retrieved a lock and hit Plaintiff in the head with the lock. *Id*. at 1-2. Defendant Whitley testifies that he questioned

10

several inmates in the dorm, and they confirmed that Plaintiff argued with Niles and pulled a knife on Niles in the dorm. *Id*. at 2. Defendant Whitley testifies that he was not aware of any substantial risk of harm or of any facts indicating Plaintiff was at risk of being harmed on the date of the incident. Doc. 41-1 at 1. After the incident, Defendant Whitley verbally reprimanded both Plaintiff and Niles as to their negative behavior. Doc. 41-1.

>Defendant Whitley further testifies:
>
>The Ventress K-9 Unit Patrols outside the perimeter fence on a daily basis looking for contraband that someone may have dropped off to be picked by inmates. Employees go through shakedown upon entering the facility to ensure no contraband is introduced into the facility. Dorms are randomly shook down on a weekly basis to look for contraband, such as drugs, phones, or other paraphernalia. There are two (2) perimeter vehicles that rove the perimeter 24 hours 7 days a week around the compound to endure no one tries to escape or no one attempts to throw contraband over the fence.

Doc. 35-2 at 2.

Here, Plaintiff does not allege that he complained to any prison official he was in danger of being attacked by any inmate, including inmate Niles, nor does he challenge either Defendants' testimony that they were unaware of any risk to Plaintiff from which they could infer that a substantial risk of harm existed to Plaintiff prior to the June 2, incident. Instead, the record establishes that the altercation occurred when Plaintiff and Niles engaged in a verbal altercation while in pill line, that Plaintiff pulled a knife on Niles, and that Niles hit Plaintiff in the head with a lock. Doc. 26-4 at 1-2; Doc. 35-1 at 1, 7; Doc. 35-2 at 1-2.

There is no evidence any correctional officer witnessed the assault and the first knowledge correctional officials received regarding the fight occurred when Plaintiff reported his injuries to Correctional Officer Brittani Grant who then notified Defendant Whitley. Doc. 26-4 at 4; Doc. 26-2 at 1; Doc. 35-2 at 1.

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that either Defendant Givens or Defendant Whitley subjectively knew of a risk of harm to him posed by inmate Niles, or any inmate for that matter. Plaintiff's contention that because Defendants are charged with maintaining security and "allow these inmates to do Ice and synthetic marijuana all night," is not evidence that any defendant knew that he faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could

11

be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Further, and without disputing that inmate-on-inmate assaults occur in the correctional system, even assuming the institutional facility was experiencing understaffing or overcrowding at the time of the assault on Plaintiff, such is insufficient to establish Defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm. *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (observing that although increasing the number of officers in an area of the facility "may have improved security [at the prison, the warden's] decision not to do so did not create a substantial risk of harm."); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (explaining that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to.").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendants actually drew this inference, and, thereafter, ignored the known risk. Here, Plaintiff has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm. Rather, the evidence indicates that inmate Plaintiff's assault was a sudden, isolated incident. *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to

identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack].''); *Brown*, 894 F.2d at 1537 (holding that "negligent failure to protect an inmate from attack does not justify liability under § 1983."). Niles' assault on Plaintiff was an unfortunate event. It does not, however, reflect deliberate indifference by Defendants. The evidence reflects the events complained of unfolded quickly. Correctional officers and Defendant Whitley responded to the incident upon becoming aware of the situation. Plaintiff received prompt medical care and attention, and correctional officers immediately reported the incident to Defendant Whitley, who then promptly reported the incident to On Call Supervisor Correctional Captain Patricia Myers, Regional Coordinator Cheryl Price, and I&I Investigator Leroy Dale. Doc. 26-4 at 1-2.

Because Plaintiff has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. *Carter*, 352 F.3d at 1350. Since the record fails to demonstrate that the incident between Plaintiff and Niles occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified immunity and summary judgment is due to be granted in their favor on Plaintiff's claims of failure to protect or inadequate security. *See Celotex Corp.*, 477 U.S. at 322.

### 3. Ice and Synthetic Marijuana have Ruined Alabama's Prisons[2]

Insofar as Plaintiff complains about the conditions at Ventress in connection with his allegations relating to synthetic drugs, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1288-89 (11th Cir. 2004) (citing *Rhodes v. Chapman,* 452 U.S. 337, 345-46 (1981)). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id*. at 1289 (quoting *Rhodes,* 452 U.S. at 346) (internal quotations and citation omitted).

The Constitution, however, "does not mandate comfortable prisons." *Id*. (quoting *Rhodes*, 452 U.S. at 349) (internal quotations omitted). "Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary

---

[2] The Court adopts and incorporates herein, the deliberate indifference standard set forth *supra* in Section C, Subsection 1.

infliction of pain.'" *Id*. (quoting *Rhodes*, 452 U.S. at 347). As explained above, to establish an Eighth Amendment violation, Plaintiff must establish both objective and subjective elements. *Caldwell*, 748 F.3d at 1099. Plaintiff must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh,* 268 F.3d at 1028-29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (further citation omitted).

As noted *supra*, nowhere in the investigation of the June 2 incident was there mention of drugs. Indeed, the evidence reflects that Plaintiff entered a verbal altercation with Niles while on pill line and that he threatened Niles with a knife. Defendant Whitley also provided detailed testimony as to the actions taken by correctional staff in preventing contraband from entering Ventress. *See* Doc. 35-2 at 2. Plaintiff's conclusory allegations that inmates are permitted to have and ingest or inject synthetic drugs is wholly threadbare and unsupported by the record.

Plaintiff also does not allege that he complained to any prison official as to his claims of drugs, nor does he challenge Defendant Whitley's testimony that the staff at Ventress employ extensive measures to prevent contraband from entering the facility. The record is void of any drug involvement and rather, as noted *supra*, establishes that the altercation occurred after Plaintiff and Niles engaged in a verbal altercation while in pill line. Doc. 26-4 at 1-2; Doc. 35-1 at 1, 7; Doc. 35-2 at 1-2.

Further, as the Court previously found, even had Plaintiff satisfied the objective component of his conditions claim, he fails to establish the subjective component because he has not shown that either defendant subjectively knew of a risk of harm to him posed by drugs. Plaintiff's contention that because Defendants are charged with maintaining security and "allow these inmates to do Ice and synthetic marijuana all night," is not evidence that any defendant knew that he faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099-1100.

Since the record fails to demonstrate that the incident between Plaintiff and Niles occurred due to any deliberate indifference or reckless disregard by Defendants, they are entitled to qualified

immunity and summary judgment is due to be granted in their favor on Plaintiff's claims that synthetic marijuana and ice are ruining Alabama prisons.

### D. Supplemental Jurisdiction

To the extent Plaintiff seeks to bring state law claims, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (citations omitted). Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428; *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (citation and quotation marks omitted). Because of the Court's resolution of the federal claims in the amended complaint, Plaintiff's supplemental state law claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### IV. Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 26) be GRANTED;

2. Plaintiff's supplemental state law claims be DISMISSED without prejudice;

3. This case be DISMISSED with prejudice;

4. Judgment be ENTERED in favor of Defendants;

5. No costs be taxed.

It is further

ORDERED that **on or before April 18, 2022,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections

will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 4th day of April 2022.

    /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE